Christopher J. Reichman  SBN 250485
Justin Prato SBN 246968
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971
chrisr@prato-reichman.com
justinp@prato-reichman.com

Attorneys for Class and Named Plaintiff
PAUL SAPAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SAPAN, individually and on Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **Violation(s) of Telephone Consumer Protection Act of 1991** |
| BENEFYTT TECHNOLOGIES, INC. f/k/a HEALTH INSURANCE INNOVATIONS, INC., a Delaware Corporation, NATIONAL CONGRESS OF EMPLOYERS, INC., a Delaware Corporation, DONISI JAX, INC. a/k/a NATIONWIDE HEALTH ADVISORS, a Florida Corporation, HELPING HAND HEALTH GROUP, INC., a Florida Corporation, | **Jury Trial Demanded** |
| Defendants. | |

- 1 -

Complaint

Plaintiff PAUL SAPAN ("Plaintiff"), individually and on behalf of the Class described below, by their attorneys, make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs and their counsel, which are based on personal knowledge.  Plaintiffs bring this action for injunctive relief and damages against Defendants, and each of them, demanding a trial by jury.

## JURISDICTIONAL ALLEGATIONS

1.      Plaintiff at all times herein mentioned was a resident of the County of San Diego, State of California.

2.      Defendant BENEFYTT TECHNOLOGIES, INC. f/k/a HEALTH INSURANCE INNOVATIONS, INC. ("HII"[name it operated under during the majority of the relevant time period]) is, and at all times herein mentioned was, a Delaware corporation, doing business in the County of San Diego, State of California.

3.      NATIONAL CONGRESS OF EMPLOYERS, INC. ("NCE") is, and at all times herein mentioned was, a Delaware corporation, doing business in the County of San Diego, State of California.

Complaint

4.      DONISI JAX, INC. a/k/a NATIONWIDE HEALTH ADVISORS ("NATIONWIDE") is, and at all times herein mentioned was, a Florida Corporation, doing business in the County of San Diego, State of California.

5.      HELPING HAND HEALTH GROUP, INC. ("HELPING HAND") is, and at all times herein mentioned was, a Florida corporation, doing business in the County of San Diego, State of California.

6.      HII, NCE, NATIONWIDE, and HELPING HAND are all collectively referred to herein as Defendants.

7.      This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq.  The U.S. Supreme Court recently decided that federals courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441.  *Mims v. Arrow Fin. Services, LLC*, -- U.S. --, 132 S.Ct. 740, 753 (2012).

8.      At all times herein mentioned each defendant was the partner, agent and employee of each co-defendant herein and was at all times acting within the scope of such partnership, agency and employment and each defendant ratified the conduct of each co-defendant herein.

9.      At all times herein mentioned each employee, representative, officer, director, or consultant of any Defendant was acting as its agent.

## **NATURE OF THE ACTION**

10.    Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

*All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendants and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from April 26, 2017 to the present, including up to and through trial.*

11.    HII is the principal actor in a scheme to sell short term non-Affordable Care Act compliant medical insurance plans and other low quality insurance related services though fraud and deceit.

12.    While much of the fraud, deceit and bait and switch tactics are matters to be policed by state insurance regulators—some of whom have already taken action—all of these lies are started by making illegal telemarketing calls prohibited by the Telephone Consumer Protection Act of 1991 ("TCPA"), which gives victims of junk calls a private right of action to sue for the intrusion on their privacy.

13.    The modus operandi is the same for all the calls in this case, a boiler room phone salesperson working for an insurance agent like NATIONWIDE and

Complaint

HELPING HANDS, who is contracted to master agent HII, makes a "cold call" to an unsuspecting consumer using either pre-recorded messages or auto-dialers in order to sell the junky insurance products and "memberships" HII has bundled together.

14.     These cold calls are made to massive lists of phone numbers in the United States with no regard for whether these numbers have been registered on the National Do-Not-Call Registry ("DNC") or not.

15.     If the target answers this call, he or she will then hear either a pre-recorded message asking them to "press 1" or other numbers at various prompts during the pitch or a autodialing live agent come on the line to make the sales pitch.

16.     During the prerecorded calls, if the victim presses the numbers at the prompts indicating they can qualify for the low quality HII insurance bundle, they will then be connected with a sales person who will aggressively and deceitfully attempt to sell the bundle.

17.     During the live calls, the victim will hear a pause at the beginning of the call while an auto-dialer connects the call to a live sales representative who will aggressively and deceitfully attempt to sell the bundle.

18.     Sales agents will routinely lie about whose insurance they are appointed to sell baiting victims with name brands like Blue Cross when their only

- 5 -

Complaint

appointment is with HII affiliates like Unified Life Insurance Company ("Unified") or Companion Life Insurance Company ("Companion"), and they will also lie about their qualifications, licensing, years as sellers, whether products in the bundle are mandatory or even necessary, and in many cases the telephone sales representative is not the actual agent whose name will appear on a policy.

19.     If the consumer then purchases any plan HII is the master agent who takes all payments and distributes them to their downstream boiler room agents and the companies whose products make up the bundle.

20.     The purchaser receives emails and coverage documents from HII welcoming them to the insurance plan.

21.     The bundle is always centered on a non-Affordable Care Act compliant medical insurance plan from Unified or Companion but includes many other substandard components.

22.     Purchasing a plan will require the consumer to pay a one-time fee to NCE for a "membership" of dubious value since all they offer are so-called discounts on health related services, most of which are available to the general public anyway.

23.     The real purpose of the NCE membership fee is to get a few hundred dollars up front of which NCE only gets a small amount, but the majority of which HII will channel to the boiler room operators like HELPING HAND and

Complaint

NATIONWIDE so they can pay their phone jockeys a one-time commission while they and HII hold most or all of the valuable residual commission.

24.     The bundle also includes similar "plans" from non-insurance companies like Med-Sense and Scrip Pal which merely collect fees in exchange for giving plan holders not insurance but just discounts and coupons on some medical related things like prescriptions and eye glasses.

25.     However, again, these practices are regulated by state authorities and the gravamen of this action is the illegal calls used to sell these bundles which are made by boiler rooms like HELPING HAND and NATIONWIDE with the full knowledge and assistance of HII.

26.     The TCPA was passed in order to regulate telemarketing by prohibiting autodialed/prerecorded calls to cell phones and prerecorded calls to residential lines in the absence of prior express written consent obtained from the target before making the calls.

27.     Defendants have intentionally violated the TCPA in a so-far successful attempt to sell low quality insurance plans for many years.

## FACTUAL DETAILS RE NAMED PLAINTIFF

28.     Mr. Sapan made a log of all the HII-selling calls he received from HELPING HAND and NATIONWIDE with the date and time sent and the Caller

ID information in a spreadsheet, which is attached hereto as Exhibit 1 and incorporated herein as if set forth verbatim.

29.     Mr. Sapan's residential line has been tariffed as a residential line since he was assigned it by the phone company and it has been continuously registered on the National "Do-Not-Call" Registry from at least December 22, 2007 to the present.

30.     Mr. Sapan never gave any of the Defendants express written permission to call him, nor does he have an established business relationship nor personal relationship with HELPING HAND, NATIONWIDE nor any other Defendant.

31.     In just a short one-month time span from April 24, 2017 to May 23, 2017, Defendant HELPING HAND transmitted fifteen (13) prerecorded telemarketing calls to Mr. Sapan's residential phone (310-444-1999) to try to sell HII's bundle of insurance related services.

32.     All but the very first call used the very similar faked Caller ID Numbers from the 941 area code, which were probably faked or "spoofed". (Ex. 1)

33.     During the first call on April 24, 2017 HELPING HAND used Caller ID Number 516-218-9823 and Mr. Sapan played along with the prerecorded message solely to determine who was calling and finally a person saying his name was "Kyle" came on the line and volunteered that he was with "Helping Hand

Complaint

Health Group" and he then tried to pitch Mr. Sapan on health insurance, and after a momentary disconnect, Mr. Sapan told him he was not interested.

34.     The next call came nine (9) minutes later on the same day and played the exact same prerecorded message, and another one came a couple hours later playing the same message and when Mr. Sapan played along because these calls used different CID number from the first but the prerecorded message were identical.

35.     The next day Mr. Sapan missed four (4) calls from the same or very similar CID numbers, but on April 26th he answered and got the same prerecorded message.

36.     And on May 11, 2017, Mr. Sapan again played along to the same prerecorded message and the same "Kyle" from before came on this time saying he was with "Helping Hand Network" saying the policies were underwritten by Unified.

37.     None of the HELPING HAND calls transmitted an accurate Caller ID Name identifying HELPING HAND as the calling party.  (Violative of TCPA under 47 C.F.R. § 64.1604).

38.     For each HELPING HAND call Mr. Sapan was unable to answer, he alleges on information and belief that that these calls were made by Defendants for the same telemarketing purpose as in all the calls he answered, which all used

Complaint

similar CID numbers, played the same prerecorded message, and had the same self-identification as "Helping Hand" once a live representative came on the line.

39.     In just a short thirteen (13) day span from April 26, 2017 to May 8, 2017, Defendant NATIONWIDE transmitted five (5) telemarketing calls to Mr. Sapan's residential phone (310-444-1999).  All but one call used the exact same Caller ID number 310-494-2699 to try to sell HII's bundle of insurance related services.

40.     Mr. Sapan missed the first two calls from Caller ID number 310-494-2699 but answered the third on April 27, 2017 and it immediately played a prerecorded message asking about health insurance and asking to "press 1" if interested, which Mr. Sapan did solely to determine who was calling and a person saying his name was "Trestan" or "Tristan" came on the line and volunteered that he was with "Nationwide Health Advisors" and he then tried to pitch Mr. Sapan on health insurance, and after getting some company information form "Trestan", Mr. Sapan said he was not interested and hung up.

41.     "Trestan" from "Nationwide Health Advisors" called back a few minutes later using Caller ID number 800-533-5125 to try to further the sales call after being told no and left a voicemail when Mr. Sapan did not answer.

42.    Mr. Sapan confirmed that 800-533-5125 was the phone number for
DONISI JAX a/k/a NATIONWIDE HEALTH ADVISORS located in Florida from
an internet search shortly after this call.

43.    On May 8, DONISI JAX a/k/a NATIONWIDE HEALTH
ADVISORS called again using the same Caller ID number 310-494-2699 as before
but this time "Lisa" came on the line claiming she was with "Health Solutions" and
asking if Mr. Sapan was interested in health insurance, and since the call differed
slightly he played along again solely to nail down who was calling and she
transferred the call to someone who self-identified as being with "Nationwide
Health Advisors" who, upon being asked, confirmed they were in Florida, after
which Mr. Sapan hung up since it was the same caller again and he had already
told them he was not interested.

44.    While DONISI JAX, INC. a/k/a NATIONWIDE HEALTH
ADVISORS does business primarily under the latter name, they do not appear to
have registered "Nationwide Health Advisors" as a legal trade name in their home
state of Florida nor anywhere else so far as Plaintiff was able to determine, and
thus this may not be a legal proper name for the company.

45.    Plaintiff alleges on information and belief that none of the
NATIONWIDE calls transmitted an accurate Caller ID Name identifying
NATIONWIDE as the calling party and only the one using Caller ID Number 800-

Complaint

533-5125 transmitted and accurate number and that the other was faked or "spoofed" to appear to be a local number to increase the chance the victim would pick up.  (Violative of TCPA under 47 C.F.R. § 64.1604)

46.     Mr. Sapan alleges that since early 2017 to present Defendants may have made more violative calls to Plaintiff's residential line that he was unable to log or identify at the time and expressly includes claims for them herein even though the specifics of the dates and times are unknown at this time without the aid of discovery.

## LIABILITY OF HELPING HAND AND NATIONWIDE

47.     During HELPING HAND's calls to Mr. Sapan in which a representative came on the line they self-identified as being with some variation of "Helping Hand" and all the prerecorded messages were the same.

48.     During DONISI JAX, INC. a/k/a NATIONWIDE HEALTH's calls to Mr. Sapan in which a representative came on the line they self-identified as being with some variation of "Nationwide Health Advisors", though in one case only after giving a false name the first time.

49.     The Better Business Bureau ("BBB") report for "Nationwide Health Advisors" in Florida confirms that they sell the exact HII bundles Mr. Sapan was pitched during the calls and that the BBB received numerous complaints for telemarketing following the same pattern as the calls to Mr. Sapan.  See,

- 12 -

Complaint

https://www.bbb.org/south-east-florida/business-reviews/insurance-agency/nationwide-health-advisors-in-fort-lauderdale-fl-90344592/reviews-and-complaints.

50.     The BBB report also identifies the true company name of Donisi Jax, Inc., which unlike for "Nationwide Health Advisors" is a registered company and trade name with the Florida Department of State Division of Corporations.  See, http://search.sunbiz.org/Inquiry/corporationsearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=DONISIJAX%20P1500 15000077&aggregateId=domp-p15000077614-d535c2b0-5c23-46ce-abcb-84f39a9dad8a&searchTerm=donisi%20jax&listNameOrder=DONISIJAX%20P15 1500007761.

51.     Multiple other federal court complaints link these exact same types of calls, in some cases using the same Caller ID numbers to HELPING HAND and DONISI JAX, INC. a/k/a NATIONWIDE HEALTH selling the exact same HII and NCE bundled service, not the least of which is another case against HII for different TCPA violations, *Moser v. Benefytt*, CASD Case No. 17-cv-1127-WQH-KSC, which was class-certified on August 7, 2019 (Dckt. No. 145) and which is currently pending at the Ninth Circuit on appeal of that certification.  (9th Cir. Case No. 19-56224).

Complaint

## **LIABILITY OF HII**

52.     As mentioned above, HII is the principal orchestrator of the illegal calls and boiler room junk insurance sales scheme, and they have been cited by state insurance regulators before.

53.     Just back in April of this year Unified settled "claims of unlawful, deceptive sales" practices for $2.8 million with The Attorney General of the State of Massachusetts for HII orchestrated policies, and a true and correct copy of the Attorney General press release announcing the settlement is attached hereto as Exhibit 2 and incorporated herein as if set forth verbatim.

54.     The Insurance Commissioner of the State of Arkansas issued a Cease And Desist and Order To Show Cause against HII in 2016, a true and correct copy of which is attached hereto as Exhibit 3 and incorporated herein as if set forth verbatim.

55.     On May 9, 2016, the Securities and Insurance Commissioner of the State of Montana issued a Cease And Desist and Summary Suspension against both HII and Unified and all their representatives licensed in the State of Montana, a true and correct copy of which is attached hereto as Exhibit 4 and incorporated herein as if set forth verbatim.

56.     The Notice of Proposed Agency Action and Opportunity for Hearing issued prior to the Montana Insurance Commissioner's Order describes in

Complaint

considerable detail HII's central role in organizing the insurance scheme and creating the sales environment that leads to all the deceptive and unlawful sales practices including TCPA violations.

57.    A true and correct copy of the Notice of Proposed Agency Action and Opportunity for Hearing filed by the Office of the Montana State Auditor ("Montana NPAA"), Commissioner of Securities and Insurance is attached hereto as Exhibit 5 and incorporated herein as if set forth verbatim.

58.    That document, incorporated and alleged herein verbatim, shows HII's central role:



59.    And just as alleged above, the Montana NPAA similarly describes how the NCE enrollment fee is used primarily to pay the boiler-room sales

Complaint

people's commission so master agent HII and its sub-agents HELPING HAND and NATIONWIDE (and their owners) can all profit from the residual commission income.  See, Exhibit 5, Montana NPAA, p. 5.

60.    And, as alleged above, if anyone purchases one of these HII bundled plans, their introductory e-mail and all further communications to the new customer will be from HII.

61.    A true and correct copy of the first e-mail received by Mr. Moser in the case mentioned above involving separate TCPA violations after he signed up for one of the HII plans sold in order to determine the relationship of the Defendants in that highly similar case is attached hereto as Exhibit 6 and incorporated herein as if set forth verbatim.  (Note, that case is about illegally autodialed and prerecorded calls but has nothing to do with the Do-Not-Call Registry, the sole cause of action in this case).

62.    HII not only creates the scheme as well as the environment engendering illegal telemarketing, they most certainly know their sub-agents are making such TCPA-violative calls, and have known since at least June 27, 2014.

63.    On June 27, 2014, Mr. Moser from the other separate TCPA case in the Southern District of California alleged that he had sued HII in an earlier state court action for earlier TCPA-violative illegal telemarketing calls he had received

Complaint

from HII and their sub-agents up to that time, showing notice of telemarketing problems going far back before the class timeline in this instant case.

64.     A true and correct copy of Mr. Moser's first state court case against HII for TCPA violations is attached hereto as Exhibit 7 and incorporated herein as if set forth verbatim.

65.     On January 28, 2015, Mr. Moser and HII settled these prior state court claims in a formal written release, a true and correct copy of which is attached hereto as Exhibit 8 and incorporated herein as if set forth verbatim.

66.     Thus, not only are HII's sub-agents like HELPING HAND and NATIONWIDE violating the TCPA with HII's express or implied authority, there is simply no doubt that HII knows what its agents are doing for its benefit and ratifying their conduct after the fact.

67.     And even without all of HII's direct involvement and knowledge from prior lawsuits, any company that did even the vaguest and most cursory internet only research would almost immediately discover a multitude of TCPA-related junk call complaints against sub-agents like HELPING HAND and NATIONWIDE.

68.     Nearly every outbound Caller ID number or callback number used by HELPING HAND has complaint notes on sites like 800Notes.com from annoyed telemarketing victims.  See, e.g., https://800notes.com/Phone.aspx/1-516-218-9823

Complaint

(number used for HELPING HAND call to Mr. Sapan on April 24, 2017), and, https://800notes.com/Phone.aspx/1-310-494-2699 (number used for all but one NATIONWIDE calls to Mr. Sapan)

69.    And NATIONWIDE not only has similar 800Notes.com reports on its Caller ID number referencing its true corporate name, but even its Better Business Bureau page shows junk call complaints, and its Google reviews which pop right up whenever the company name is searched show a low one star rating and most of the 22 reviews are complaints about junk calling.  See, https://www.bbb.org/south-east-florida/business-reviews/insurance-agency/nationwide-health-advisors-in-fort-lauderdale-fl-90344592, and, https://www.google.com/search?q=nationwide+health+advisorrs&ie=utf-8&oe=utf-8#lrd=0x88d903b9471d0207:0x1decc5eeac2aef3f,1,.

70.    As a master agent, HII would have to be brain dead or intentionally and willfully ignorant to avoid knowing that its sub-agents HELPING HAND and NATIONWIDE are routinely and brazenly breaking the TCPA laws and regulations.

## **LIABILITY OF NCE**

71.    NCE was named in the prior lawsuit in the state court case by Moser mentioned above for other separate TCPA violations committed by HII sub-agents

Complaint

and thus had prior notice of problems with junk telemarketing by subagents selling its memberships.  See, Exhibits 6-7.

72.    And NCE could hardly fail to notice all of these state actions and public record lawsuits for illegal sales practices and junk calling violations if they did any reasonable due diligence regarding their master agent partner HII and its long-time subagents HELPING HAND and NATIONWIDE, who have direct contractual agreements with NCE as well.

## **FINAL LIABILITY ALLEGATIONS**

73.    Plaintiff pleads on information and belief that HELPING HAND is explicitly hired by HII and NCE as their agent in order to make the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry to the benefit of HII and NCE.

74.    Plaintiff pleads on information and belief that HII and NCE know or reasonably should have known (implied agency), that HELPING HAND was making the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry to the benefit of HII and NCE.

75.    Plaintiff pleads on information and belief that HII and NCE explicitly condoned the actions of HELPING HAND in making the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry to the benefit of HII and NCE by condoning their actions afterwards.

76.     Plaintiff pleads on information and belief that NATIONWIDE is explicitly hired by HII and NCE as their agent in order to make the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry to the benefit of HII and NCE.

77.     Plaintiff pleads on information and belief that HII and NCE know or reasonably should have known (implied agency), that NATIONWIDE is making the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry to the benefit of HII and NCE.

78.     Plaintiff pleads on information and belief that HII and NCE explicitly condone the actions of NATIONWIDE in making the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry to the benefit of HII and NCE by condoning their actions afterwards.

## **ACTUAL HARM & WILFUL AND KNOWING CONDUCT**

79.     The Telephone Consumer Protection Act of 1991 ("TCPA") was passed in order to regulate telemarketing and requires that no telemarketer may call any number registered on the National "Do-Not-Call" Registry without prior express consent or a prior established business relationship.

80.      Defendants have intentionally violated the TCPA in a so-far successful attempt to sell low quality insurance plans for years.

Complaint

81.    Plaintiff has been harmed by the junk calls complained of herein by the direct waste of his time during the call itself, the indirect waste of time in having to break from other important tasks and spend time catching up after the junk call, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

82.    Plaintiff has been harmed by the calls he did not answer by the direct waste of his time in having to check the Caller ID while he was busy in meetings or with other projects before declining the call, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

83.    During each of Defendants' calls, Plaintiff wanted to make or receive a call to/from someone else for his own personal or business reasons and was blocked from doing so by the line being tied up by Defendants.

84.    As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 5% of his monthly phone bills in April and May of 2017 since Defendants calls constituted 5% or more of the total

Complaint

calls to his phone during the heights of their junk calling campaign in those two months.

///

///

85.    Plaintiff alleges on information and belief that Defendants made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services.

86.    Plaintiff alleges on information and belief that Defendants made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations.

## CLASS ACTION ALLEGATIONS

87.    **Description of the Class**:  Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

> *All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendants and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from April 26, 2017 to the present, including up to and through trial.*

88.     Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

89.     Plaintiffs reserve the right to modify the Class description and the Class period based on the results of discovery.

90.     **Numerosity**:  The proposed Class is so numerous that individual joinder of all its members is impracticable.  Due to the nature of the evidence of the number of calls made by Defendants, Plaintiffs believe that the total number of Class members is at least in the tens of thousands and members and the members are geographically dispersed across California and the United States.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, namely through Defendants' call records.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

Complaint

91.     **Common Questions of Law and Fact Predominate**:  There are many questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members.  Common questions of fact and law include, but are not limited to, the following:

a.     Whether Defendants transmitted two or more sales calls in any one calendar year to numbers on the National "Do-Not-Call" Registry.

b.     Whether Defendants transmitted these calls without prior express consent from the owners of those lines or a business relationship with them established before the calls were made.

c.     Whether the transmission of these calls was done willfully or knowingly by Defendants.

d.     Whether agency relationships giving rise to TCPA liability exist amongst and between HII, NCE, NATIONWIDE and HELPING HAND.

92.     **Typicality**:  Plaintiffs' claims are typical of the claims of the members of the Class.  Plaintiffs and all members of the Class have been similarly affected by Defendants' common course of conduct since Defendants' have repeatedly called the Class to sell their low quality insurance products.

93.     **Adequacy of Representation**:  Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs have retained counsel

with experience in handling complex litigation.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.  Neither Plaintiffs nor their counsel have any interests adverse to those of the Class.

94.     **Superiority of a Class Action**:  Plaintiffs and the members of the Class suffered, and will continue to suffer, intangible and tangible harm as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is impractical.  Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum.  The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class member.  Furthermore, for many, if not most, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice

Complaint

95.     Adjudication of individual class member's claims with respect to Defendants would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: TCPA VIOLATION
### CALL TO NUMBER ON THE NATIONAL "DO-NOT-CALL" REGISTRY
### (On Behalf of the Plaintiff Class)

96.     Plaintiffs reallege all paragraphs above and incorporates them herein by reference.

97.     Plaintiffs are bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

98.     Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations."

99.     At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

100.   Defendants have called Plaintiff's residential telephone line for solicitation purposes at least twice during a calendar year during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658.  These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line.  These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff.  37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

101.   Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the National "Do-Not-Call" Registry rules promulgated thereunder.  Plaintiff may obtain relief in the form of injunctive relief or Plaintiff may recover up to $500.00 for each violation, or both.  If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

/ / /

/ / /

/ / /

Complaint

/ / /

/ / /

WHEREFORE Plaintiffs pray for judgment against defendants, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

1.  For an award of $500.00 for each violation of 47 U.S.C. § 227;
2.  For an award of $1,500.00 for each such violation found to have been willful;

On ALL CAUSES OF ACTION:

3.  For attorney's fees pursuant to all applicable federal and state statutes including without limitation Federal Rule of Civil Procedure 23, California Code of Civil Procedure § 1021.5, California Civil Code §1770, & etc.;
4.  For costs of suit herein incurred; and
5.  For such further relief as the Court deems proper.

DATED: April 26, 2021                    **PRATO & REICHMAN, APC**


                                         /s/Christopher J. Reichman, Esq.
                                         By: Christopher J. Reichman, Esq.
                                         **Prato & Reichman, APC**
                                         Attorneys for Plaintiff,
                                         Paul Sapan

Complaint